```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF TEXAS
          AMARILLO DIVISION
```

UNITED STATES OF AMERICA,           §
                                    §
            Plaintiff,              §
                                    §
VS.                                 §    Criminal No. 2:17-CR-112-D
                                    §
MARIA D. ALVARADO,                  §
                                    §
            Defendant.              §

## MEMORANDUM OPINION AND ORDER

Defendant Maria D. Alvarado ("Alvarado") moves under 18 U.S.C. § 3145(b) to revoke the magistrate judge's pretrial detention order and set a bond for her release pending trial. Following *de novo* review of the evidence presented at the detention hearing conducted by the magistrate judge,[1] the court denies the motion.

I

Alvarado is charged in a one-count indictment with the offense of possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i). Following Alvarado's arrest, the government moved to detain her, both as a flight risk and as a danger to the community.

---

[1] "When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). The court's review of the record developed before the magistrate judge is an appropriate procedure to comply with that obligation. *See, e.g., United States v. Farguson*, 721 F. Supp. 128, 129 n.1 (N.D. Tex. 1989) (Fitzwater, J.).

The magistrate judge conducted a detention hearing during which Drug Enforcement Administration ("DEA") Special Agent John Carson ("Agent Carson") testified. According to Agent Carson, on October 11, 2017, the DEA Task Force received a call from the Texas Department of Public Safety ("DPS") informing the Task Force that Alvarado was being held in Carson County, Texas on suspected drug charges. Alvarado had been stopped for speeding, and, pursuant to a consent search, DPS troopers had discovered inside the trunk of her car two large travel bags containing two bundles of a substance believed to be heroin.[2]

According to Agent Carson, he interviewed Alvarado, and she stated that the bags located in the trunk were hers, that she was traveling to North Carolina, that she believed there was money in the bags, that in the past she had transported loads of money between Las Vegas and Los Angeles, and that she had worked for a narcotics organization for three months and had transported money for them three times. Although Alvarado denied during the interview that she had transported drugs in the past, she also stated that "you don't know what you're transporting," and that "when you walk in and you see a kilo on the table, then you know you are picking up a kilo," which led Agent Carson to believe that Alvarado had transported drugs before. Alvarado admitted during the interview that she had been arrested in the past and had been convicted "for narcotics." Agent Carson also testified that, prior to the detention hearing, he had made an inquiry into Alvarado's crossings into and out of Mexico. He determined based on the report he received that, in the past two years, Alvarado

---

[2]The bundles were hidden inside a false bottom in the travel bags. It was later determined that the bundles contained 1.8 kilograms of heroin.

had made approximately 65 crossings into the United States from Mexico.

Alvarado testified that she is a Mexican citizen but has lived in Pasadena, California since she was four years old (she is now 41 years old). She stated that she had been to Tijuana for dental work, parties, to visit the doctor, and to drive people to the airport, but that she did not have any family in or ties to Mexico. According to Alvarado, all of her children reside in the United States; she is a naturalized U.S. citizen; she is currently employed in the United States by her sister Ana Lucia Garcia's ("Garcia's") catering company; she intends to continue her employment; and she would be willing for Garcia to serve as her custodian.[3] Alvarado also testified that she did not intend to flee to Mexico and that she is willing to abide by any conditions the court imposes to assure her appearance in the future, including surrendering her passport. Alvarado stated that she has never in the past failed to appear in court when required.

Alvarado has a criminal history that includes, *inter alia*, driving with a suspended license and possession of a controlled substance. In 2011 Alvarado was convicted for possession of three ounces of methamphetamine. She testified that she had purchased the methamphetamine for a friend (not for her own personal use) from a known drug dealer, and that the friend paid her for the methamphetamine.

Alvarado testified that, before her October 11, 2017 arrest, her sister (Garcia) was also

---

[3]Although Alvarado initially stated that Garcia could serve as her custodian, she later changed her testimony to state that her brother's girlfriend, Sandra Robles, could serve as her custodian.

arrested in Carson County for suspected money laundering. She stated that the $15,000 that her sister was transporting at the time of her arrest was Alavarado's savings, which Alvarado had accidentally left in her car at the time that Garcia and their other sister (Susanna) had borrowed it to travel to an unknown destination. Alvarado's probation report shows that her monthly cash flow is $110, but Alvarado testified that she frequently purchases vehicles from Craig's List or at auctions (sometimes from out of state), fixes them, and then sells them at a profit. She also testified that, on previous occasions, she had transported money from Nevada to Los Angeles for someone named "Juan." She stated that Juan was a friend, that she did not know his last name, and that she transported the money for him as a favor.

Sandra Robles ("Robles"), who lives about five miles away from Alvarado[4] and has dated Alvarado's brother for 10 years, testified that she is willing to take custody of Alvarado. Robles stated that she does not have a criminal history, does not have a driver license, and is unemployed (she has rheumatoid arthritis and receives a monthly disability check). She testified that she would be able to check on Alvarado, but that she would have to get a ride to Alvarado's residence from Alvarado's brother. Robles testified that she was surprised to hear the allegations against Alvarado, was not aware that Alvarado had been involved in the transportation of narcotics and money, and was not aware that Alvarado's sister (Garcia) had been arrested. Robles testified that she had visited Mexico four to five times over the past two years for dental work. Although she initially testified that she had

---

[4]According to Alvarado's motion, Robles resides in Altadena, California.

not traveled outside of California and Nevada, she later acknowledged more extensive travel throughout the United States and Mexico.

Following the hearing, the magistrate judge ordered Alvarado detained without bond pending trial, finding by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of the community, and by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure Alvarado's appearance at future court proceedings. The magistrate judge based these findings on the offense conduct and Alvarado's role, the number of trips Alvarado had made to Mexico within the recent past, the fact that Alvarado had in the past crossed into Mexico without a passport, the fact that Alvarado's family members were unaware of her prior illegal activity, the fact that Alvarado had in the past been arrested for possession of a substantial amount of methamphetamine that was purchased from a known drug dealer for the purpose of selling to others, and Alvarado's history of driving large sums of money across the country. Alvarado now seeks review of the detention order.

II

A

An individual shall be released pending trial unless a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Alvarado is charged with a violation of the Controlled Substances Act, 21 U.S.C. 801 *et seq.*, that is, the offense of possession with intent to distribute one kilogram or more of heroin, in

violation of 21 U.S.C. §§ 841(a)(1), punishable under 21 U.S.C. § 841(b)(1)(A)(i) by imprisonment for a period that "may not be less than 10 years." Under the Bail Reform Act, the existence of probable cause—here, the grand jury indictment—to believe that Alvarado committed this offense creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Alvarado as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(e)(3)(A) and (f)(1)(C). "The presumption shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). The mere production of evidence, however, does not completely rebut the presumption. In making its ultimate determination, "the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society." *Id*. at 798-99.

B

Because an indictment provides probable cause that a defendant committed an offense, *see United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987), Alvarado's indictment for violating 21 U .S.C. § 841(a)(1) (punishable under 21 U.S.C. § 841(b)(1)(A)(i)) is sufficient to trigger the statutory presumption that no condition or combination of conditions will reasonably assure her appearance and the safety of any other person and the community. *See, e.g., Trosper*, 809 F.2d at 1110 (holding that presumption was properly applied to defendant upon proof that he had been indicted under the Controlled Substances Act).

C

The court holds that Alvarado has adduced sufficient evidence to rebut the presumption that no condition or combination of conditions will reasonably assure her appearance. *See id.* ("[T]he burden imposed on the defendant is the production of evidence supportive of the point for which it is offered."). Alvarado testified at the detention hearing that she had no intention to fail to appear in the future; that she had never in the past failed to appear in court when required; that she was willing to surrender her passport to ensure that she would not leave the country; that she was willing to comply with any other conditions of release the court imposed; and that her brother's girlfriend of over ten years (Robles) was willing to serve as a third-party custodian. This evidence rebuts the presumption that no condition or combination of conditions will reasonably assure Alvarado's appearance.

It is not entirely clear what evidence Alvarado relies on to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community. The court will assume that Alvarado is relying on her testimony that she is not a violent person, that she did not know that she was transporting drugs on October 11, 2017, and that she had never transported drugs in the past, and will further assume *arguendo* that this evidence is sufficient to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

D

Even if Alvarado has adduced sufficient evidence to overcome the rebuttable

presumption against release, or the court assumes *arguendo* that she has, the court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community, and it finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Alvarado's appearance.

Beginning with the safety of any other person and the community, this court has previously held that "[t]he risk of continued narcotics trafficking on bail constitutes a risk to the community." *United States v. Anderson*, 2014 WL 2764747, at *4 (N.D. Tex. June 18, 2014) (Fitzwater, C.J.) (quoting *Hare*, 873 F.2d at 798). Even if the court assumes *arguendo* that Alvarado has rebutted the presumption of danger to the community, the presumption still carries evidentiary weight. *Id.* (citing *Hare*, 873 F.2d at 798-99). The government introduced clear and convincing evidence that there is a risk of continued narcotics trafficking if Alvarado is released on bail. Alvarado was previously arrested and convicted for possession of a substantial amount of methamphetamine that she had purchased from a known drug dealer. Her sister (Garcia), for whom Alvarado works and with whom she was traveling at the time of her arrest, was also recently arrested on suspected money laundering charges. Alvarado testified that on several occasions in the past she had transported large sums of money across state lines for her friend "Juan." Although she denied that the money she transported was "drug money," she did not provide any alternate explanation for her activities. Nor did she testify that she is no longer working for, or that she no longer intends to work for, "Juan." Alvarado testified that she is able to support herself financially,

presumably based on income from her sister's catering business and her purchases and sales of vehicles, but the government produced evidence that Alvarado's monthly income is only $110. Moreover, Alvarado has made approximately 65 crossings from the United States into Mexico over the past two years. Although she explained that some of these trips were to visit her dentist or doctor, and others were to take friends to the airport, she has not offered a persuasive explanation for the balance of the trips. The court finds from the evidence introduced at the hearing that Alvarado has been involved in the past in a narcotics operation, and very likely would continue to engage in illegal drug trafficking if released.

The court also finds that the government has proved by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure Alvarado's appearance. *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985) ("[T]he judicial officer making the [reasonably assure appearance] determination should apply the simple preponderance standard. That is to say, to order detention on this ground the judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance."). Alvarado testified at the hearing that she does not have family in Mexico and that she has resided in the United States for most of her entire life. But Alvarado did not produce any evidence that she has strong ties to her community in California. In fact, the evidence suggests the opposite. The government produced undisputed evidence that Alvarado had crossed from the United States into Mexico (sometimes without a passport) approximately 65 times in the past two years. Even if the court credits Alvarado's testimony

that some of these trips were to visit the doctor or dentist or to take friends to the airport, the court is not persuaded that *all* of her travel outside of the country was for these purposes. Alvarado's testimony that her sister (Garcia) could serve as a third-party custodian is unconvincing because Garcia is herself currently charged with suspected money laundering. And testimony that Alvarado's brother's girlfriend (Robles) would be willing to assist Alvarado as a third-party custodian likewise fails to support the argument that Alvarado's appearance can be assured. Not only does Robles not own a car or have a driver license or reliable way to check up on Alvarado, but Robles was less than forthcoming when questioned during the hearing regarding her own travel history. Although Alvarado testified that she is willing to surrender her passport and submit to any other conditions of release that the court deems appropriate, the court is not persuaded that any condition or combination of conditions will reasonably assure Alvarado's appearance for court proceedings or the trial.

After considering all the factors set forth in § 3142(g),[5] the court finds by clear and

---

[5] 18 U.S.C. § 3142(g) lists the following factors for the court to consider in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community:

> (1) the nature and circumstances of the offense charged . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

convincing evidence that Alvarado is likely to be a danger to any other person and the community, and it finds by a preponderance of the evidence that Alvarado's appearance cannot be assured unless she is detained pending trial.

\* \* \*

Accordingly, Alvarado's November 3, 2017 motion to revoke order of detention and set bond is denied. The court orders that Alvarado be held without bond pending trial as follows. She is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. She is to be afforded reasonable opportunity for private consultation with her counsel. By order of this court, to be issued in the future, the person in charge of the corrections facility in which Alvarado is confined is to deliver her to a United States Marshal for the purpose of appearing in connection with any

---

       (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

court proceeding.

**SO ORDERED**.

November 14, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE